UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE No. 0:14-mc-60083-RSR

SAMUEL D. ROSEN,

    Appellant,

vs.

JOEL L. TABAS,

    Appellee.
_____/

### NOTICE OF FILING

COMES NOW, SAMUEL D. ROSEN, Appellant ("Rosen"), by undersigned counsel, hereby files this his Affidavit in Support of his Motion to Alter, Amend or Vacate this Court's Order Denying Expedited Motion for Stay of Mediation [D.E. 3], with Incorporated Memorandum of Law, dated January 29, 2014 [D.E. 4].

Dated: February 10, 2014.        Respectfully submitted,

                              By:    /s/ Douglas C. Broeker
                                      **Douglas C. Broeker, Esquire**
                                      Florida Bar No. 306738
                                      **SWEETAPPLE, BROEKER & VARKAS, P.L.**
                                      44 W. Flagler Street, Suite 1500
                                      Miami, Florida 33130
                                      Tel.: (305) 374-5623
                                      Fax: (305) 358-1023
                                      Doug@broekerlaw.com
                                      DocService@broekerlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail to all parties who are not on the list to receive e-mail notification/service for this case on this 10th day of February 2014.

> *I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A).*
>
> By: /s/ Douglas C. Broeker
> **Douglas C. Broeker, Esquire**
> Florida Bar No. 306738

## SERVICE LIST

gfreedman@tabasfreedman.com
USTPRegion21.MM.ECF@usdoj.gov
Damaris.D.Rosich-Schwartz@usdoj.gov
jhilliard@tabasfreedman.com
jtabas@tabasfreedman.com
administration@easleyappellate.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE No. 0:14-mc-60083-RSR

SAMUEL D. ROSEN,

    Appellant,

vs.

JOEL L. TABAS,

    Appellee.
_____/

## AFFIDAVIT

STATE OF FLORIDA    )
                               ) ss:
COUNTY OF MIAMI-DADE    )

    SAMUEL D. ROSEN, being duly sworn, deposes and says as follows:

    1.    I am the largest, if not sole, creditor in this bankruptcy proceeding and the Appellant herein. I respectfully submit this Affidavit in support of my Motion to Alter, Amend or Vacate this Court's Order Denying Expedited Motion for Stay of Mediation [D.E. 3], with Incorporated Memorandum of Law, dated January 29, 2014 [D.E. 4], which first denied my Motion for Stay pending appeal, then went on to, *sua sponte*, dismiss my appeal. As I show below, there are important questions of law respecting the procedures used by the Bankruptcy Court (Isicoff, J.) which, to my knowledge, have never been addressed by the 11th Circuit and addressed only once – by a Florida District Court (Middle District) 15 years ago.

    2.    I respectfully ask this Court's indulgence to apprise it of my personal history:

        a.    After a stint as a federal prosecutor for the National Labor Relations Board, I went into private practice and after 35 years as a federal court litigator, was forced to retire quite young because of poor health ten or eleven years ago.

1

    b.  I am a charter member of the 11th Circuit, having been a very active member of the 5th Circuit when the former was born. I was privileged to also appear for clients before 7 or 8 of the other 11 federal circuit courts of appeals and over 40 federal district court and divisions thereof, including the Northern District of Florida, the Middle District of Florida, and this Court, the Miami Division of the Southern District.

    c.  I retired from one of the large international law firms where I was also administrative head of all East Coast litigation and held several other practice and administrative positions and responsibilities including training associates in ADR proceedings. Well before the Civil Justice Expense and Delay Reduction Plans was passed, I was an ardent and outspoken advocate of ADR, and preached it every chance I got including during two terms as Chair of a New York State Bar Group and as an invited speaker at the 1985 Joint Annual Meeting of the ABA and the Bar of the United Kingdom.

    d.  I have participated in nearly 100 mediations, most as a *pro bono* mediator in the Mandatory Mediation Program attached to the Southern District of New York for almost 7 years (for which I received an award from former Attorney General Michael Mukasey, then Chief Judge of the Southern District) after an intense training program by the Center for Public Resources, and at the same time, served as an arbitrator in the Mandatory Arbitration Program attached to the Eastern District of New York.

    e.  During my service for the Southern District of New York, I achieved a "100% success" record, albeit success being defined not as a settled case, but any resolution that got the case off the assigned Judge's docket or streamlined doing so.

  3.  I set forth the foregoing <u>not</u> to impress this Court or to seek special treatment, but only because of my demonstrable commitment to ADR, particularly mediation rather than the

more judgmental arbitration and of my life-long belief that civilized society can only exist if there is a legal system which is perceived by the citizenry as fair, impartial and capable of delivering justice in a cost-effective and speedy manner. The procedures employed by the Bankruptcy Court here strike at those very values. Eschewing the inherent prerogatives of Article III judges, those of this Judicial District removed themselves from the mediation process entirely (exactly as the Southern District of New York did) by adopting a Local Rule for mediation selection, including a blindfolded clerk (not used in Southern District of New York), so as to give the users both the reality and appearance of impartiality first articulated by the Supreme Court half a century ago in <u>Commonwealth Coatings</u>. Can an Article I judge do less?

4. So strongly do I feel about what the lower court did that even though the mediation has occurred – and failed to produce a settlement in my case, at least not yet, the issues presented here are just too important to not address and that is why I am seeking judicial review and, hopefully, definitive guidelines going forward.

5. I also hasten to offer my sincere apologies to this Court to the extent that my stay motion was not as precise as it should have been in framing the important issues presented here. Although I stand before this Court as a litigant, not a counsel, I should have used my experience to better assist my counsel on those papers. Unfortunately, I was very ill at the time and just not physically capable of lending Mr. Broeker any meaningful assistance.

6. The critically important questions I ask this Court to consider are:

   a. As the lower court never invoked Local Bankruptcy Rule 1001 and, to the contrary, in the Order of Mediation appealed from explicitly invoked Local Rule 9019-2, did the Court have the power under that Rule to:

3

   i.  Order mediation in the face of my Motion to Dismiss this Chapter 11 proceedings; a motion pending for 8 months, without hearing it or even setting a date to do so?

   ii.  Order mediation to proceed despite a pending motion to disqualify trustee's counsel for misconduct?

  b.  Assuming *arguendo*, the lower court could and did abrogate Rule 9019-2, what residual basis existed for it to order any mediation at all? Did the lower court possess some inherent power to order mediation or did abrogating Rule 9019-2 leave a void in the Court's power to do so?

  7.  My counsel advised that as to question (b), there is no reported 11th Circuit case addressing those issues and that the only District Court case in Florida is the Middle District's 1998 (???? check) decision in <u>Sargent</u> which would clearly answer the question "No inherent power in the face of Rule 9019-2."

  8.  If the Court disagrees with <u>Sargent</u> and finds some inherent power in the lower court to fashion its mediation procedure, additional questions present themselves respecting the mediator selection procedure used by the lower court, to wit:

  a.  In Step 1, the lower court itself selected 3 nominees of her choosing;

  b.  If there was no agreement to any of the three, the lower court would then itself select 3 more nominees of her choosing; and

  c.  If no agreement, the lower court would then select and appoint the mediator without consultation with the parties.

  9.  Using this procedure, the lower court first nominated two sitting bankruptcy court judges and Mr. Francis Carter without disclosing Mr. Carter's firm affiliation. Trustee's counsel

then proceeded to contact all 3 to ascertain their willingness and availability to serve. It was only after that that I learned that Mr. Carter was affiliated with the Katz Barron firm, the very firm that, not 30 days earlier, the lower court had granted a motion by the Trustee to hire as counsel to him.

10. Before issuing a second panel of three, the lower court called a status conference for December 16 and when the Trustee's counsel improperly disclosed that I had rejected Judge Kimble from the first panel, the lower court demanded to know why, saying she had the right to determine if my reasons were acceptable to her. After I satisfied her, she then issued a second panel of "three," one of them being putting the rejected Judge Kimble back on, a second being James Fierberg who, based upon her repeated statements in open court that she had read the entire file in this case, the lower court surely should have known was totally unacceptable,[1] and the third being a friend of hers who she has served with on the Board of her Temple and with whom she had traveled to Israel, Brian Spector. The parties left court to consider him.[2]

11. Three days later, despite there not being an agreement yet, Trustee's counsel submitted a proposed Order Appointing Mediator, which falsely recited that the parties had

---

[1] Mr. Fierberg had, until recently, been employed by the Rice Pugatch firm and, in addition, was Mr. Pugatch's brother-in-law, the husband of his sister and Pugatch's legal assistant. Mr. Pugatch was my original counsel in this bankruptcy but was fired by me in July 2013 for his undisclosed simultaneous representation of Kenneth Welt (original Chapter 11 Trustee herein) in a case called *Nica* in which Welt was being sued personally. As the transcripts of the *Nica* case showed (the ones attached to my Motion Remove Welt as Trustee for, *inter alia*, perjury) Mr. Fierberg of the Rice Pugatch firm appeared for Trustee Welt in one of those *Nica* hearing. See, Doc. 180 and *Nica* Transcripts attached to it. See also, Transcript of August 7 hearing before Judge Ray, Doc. 265.

[2] All of the foregoing is of record on the Transcript of the December 16 hearing (Exhibit "__" hereto).

5

agreed on Mr. Spector and appointed him. Over my objections, the lower court signed the Trustee's tendered Order (Doc. 612).[3]

12. Based on the foregoing, should this Court need to reach them, the following additional questions present themselves:

    a. Assuming *arguendo*, the lower could had some unidentified inherent authority to craft her own mediation selection process, was her procedure – and implementation of it – fair, proper and acceptable given the paramount objective of avoiding any possible appearance of impropriety?

    b. Under any known selection procedure, did the lower court have the power to demand reasons for my rejection of Judge Kimble or to presume to judge whether such reasons were acceptable?

    c. Did the lower court's issuance of the Order Appointing Mediator violate its own stated procedures?

13. Based upon the foregoing and, once again, my sincerest apologies for the lack clarity in the motion to stay, I respectfully ask this Court to grant my motion for reconsideration, to grant me leave to appeal.

---

[3] Part of the problem was that at the December 16 hearing, Trustee's counsel first claimed that his familiarity with Mr. Spector was very limited in that he had had only 1 prior mediation with him. He then changed that to perhaps 3 or 4 mediations and that was the full extent of disclosure by the Trustee and his counsel. When I thereafter asked Mr. Spector for a disclosure statement, he readily complied, advising that Mr. Freedman, Trustee's counsel, had selected him six prior times as the mediator and that he also had enjoyed some personal and social dealings with the Trustee, Mr. Tabas, albeit very limited and long ago.

FURTHER AFFIANT SAYETH NAUGHT.

_____
SAMUEL D. ROSEN

The foregoing instrument was acknowledged before me this 10th day of February 2014, by SAMUEL D. ROSEN who is personally known to me and/or produced _____ as identification and who did (did not) take an oath.

```
MERLANDE MOISE
MY COMMISSION # EE 019577
EXPIRES: August 22, 2014
Bonded Thru Notary Public Underwriters
```

_____
Notary Public, STATE OF FLORIDA

My Commission Expires: 8.22.2014